UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 2:25-cr-00036-LEW |
| SAMUEL PAR-LOPEZ | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES the Defendant, Samuel Par-Lopez, by and through Zerillo Law Firm, LLC, and respectfully submits his Sentencing Memorandum for consideration by this Court.

**I.      INTRODUCTION**

On March 14, 2025, Samuel Par-Lopez (hereinafter "Samuel" or "Defendant") pled guilty by Information to Count 1 charging him with Re-Entry of Removed Alien, in violation of 8 U.S.C. § 1326(a). There is no plea agreement in this matter.

For the reasons described herein, Samuel respectfully asks this Court for a time-served sentence with no supervision to follow, as he will be removed from the United States upon completion of any term of imprisonment. The proposed sentence is sufficient but not greater than necessary to satisfy the goals of sentencing delineated at 18 USC § 3553(a)(2).

**II.     FACTUAL BACKGROUND**

   **A.      Childhood History**

1

Samuel is 37 years old and was born on September 14, 1987, in Santo Tomas La Union, a municipality in the Suchitepequez Department of Guatemala. Samuel was born to Juana Yax Tebelan and Juan Jose Par-Lopez. Samuel grew up with four, now adult, siblings: Bernabe Par-Lopez, Emelio Par-Lopez, Nelson Par-Lopez and Elmer Par-Lopez

As a child, Samuel and his family were very tight knit. At times they faced periods of financial insecurity. When that occurred, the Par-Lopez family persevered by relying on and supporting each other. To this day, Samuel and his family have a great relationship.

Beginning at the age of 13, Samuel began working in construction to support his family. At this time, child labor was not uncommon in Guatemala. Some of Samuel's siblings even began work at ages 10 or 11, working in the same field.

While Samuel and his siblings worked in construction, his father was a farmer and his mother stayed home to care for the children.

B.  **Adult History**

As an adult, Samuel continued to work in construction in Guatemala in order to provide for his family.

On November 17, 2007, Samuel departed his home in Guatemala and traveled by bus to the Mexican/Guatemala border. From there, Samuel entered Mexico and then traveled to the Mexican/Arizona border.

On November 27, 2007, Samuel illegally entered into the United States through Arizona. From there, Samuel traveled to Texas. While in Texas, Samuel worked in construction. During this time he sent money back to his family in Guatemala.

On November 30, 2008, Samuel[1] was apprehended by United States Border Patrol agents in El Paso, Texas. Samuel did not have documents that would allow him to be in or remain in the United States legally. When Samuel was apprehended he was wet and muddy from the waist down. When questioned, Samuel admitted that he entered the United States illegally by wading the Rio Grande River and crossing a canal. Samuel remained in custody and was then deported on January 14, 2009.

In 2010, Samuel married his wife, Maria Isabel Garcia Batz (hereinafter "Maria"). The two met through work and have a good relationship.

In 2011, Samuel and Maria had their first child, J. P. (age 14).

In 2014, Samuel's father passed away. This was a very traumatic time for Samuel and his family.

In 2017, Maria gave birth to their second child, J. P. (age 8).

Samuel has no family in the United States. Unfortunately, due to his incarceration, it has been very difficult for him to stay in touch with his family back in Guatemala. Prior to incarceration, Samuel was in contact with them on a daily basis.

C.   **Guatemala's Economic Issues**

As described herein, Samuel's motivation to leave his family behind in Guatemala and to risk traveling to the United States was due to the limited financial opportunities.

Guatemala struggles with deep structural challenges, including poverty, inequality, and corruption, all of which hinder economic development.[2] The business climate remains weak due to inadequate infrastructure, weak rule of law, and security concerns,

---

[1] Samuel was also apprehended with another person.
[2] https://www.focus-economics.com/countries/guatemala/

deterring foreign investment outside of sectors like textiles and agribusiness. *Id*. The country's informal economy accounts for around 70% of employment, limiting tax revenues and reducing productivity. *Id*.

In 2009, Guatemala faced a food crisis due to drought, global warming, and the effects of the international economic crisis.[3] President of Guatemala, Álvaro Colom, called on the world to provide aid. *Id*. At that time, Guatemala had the fourth highest rate of chronic malnutrition in the world and the highest in Latin America and the Caribbean. *Id*.

In 2024, Guatemala's 54.8% poverty rate was more than twice the Latin American and Caribbean average of 24.7%. *Id*. Guatemalan's severe food insecurity still affects 21.1% of the population and 12.6% of the population is undernourished.[4]

### D. Criminal History

Samuel's only criminal conviction is from November 30, 2008. Samuel was convicted of Improper Entry by an Alien. Samuel served 11 days in jail and was subsequently deported out of the United States.

### E. Offense Conduct

On February 7, 2025, Samuel was riding in a gray Honda in Wiscasset, Maine with three other persons: Josue Marien Tagua (hereinafter "Josue")[5], Ixcol Dias Guillermo Alfredo, and Ixcol Dias Antonio Fernando.

On the same date, at approximately 7:22 AM, Wiscasset Police Chief Lawrence

---

[3] https://edition.cnn.com/2009/WORLD/americas/09/09/guatemala.calamity/index.html
[4] https://americasquarterly.org/article/guatemala-by-the-numbers/
[5] Josue was driving the motor vehicle.

Hesseltine (hereinafter "Chief Hesseltine"), initiated a traffic stop on the gray Honda for failing to remove the snow on its roof.

Chief Hesseltine requested identification from the occupants[6] in the motor vehicle. Defendant presented his Guatemala Identification. None of the occupants of the gray Honda spoke English. Chief Hesseltine was unable to verify the occupants' identities due to the language barrier.

Next, Chief Hesseltine contacted the United States Border Patrol to assist.

At approximately 8:25 AM, Border Patrol Agents Ryan Lamoreau (hereinafter "Agent Lamoreau") and Patrick Willis arrived at the scene. Agent Lamoreau inquired with the occupants in Spanish regarding their citizenship and immigration status. Samuel was the only occupant to state that he was a citizen of Guatemala and did not have any documentation to stay or remain in the country and was illegally present in the United States. Samuel and the other occupants of the motor vehicle were taken into custody by Agent Lamoreaux. Samuel was transported to the Border Patrol Port of Entry in South Portland, Maine.

At the Port of Entry, Samuel was interviewed by Agent Lamoreau about his immigration status. Prior to the interview, Samuel was advised in Spanish of his *Miranda* rights and right to speak with a consular office prior to the interview. Samuel acknowledged in Spanish that he understood these rights. Samuel declined to be interviewed without an attorney present.

As described above, Samuel's motive for previously entering the United States in

---

[6] Josue was the only occupant who produced a Rhode Island driver's license or some other identification issued by any State or the United States.

2007 and for reentering in 2023 was to provide financial security for his mother, wife, and children.

### F. Acceptance of Responsibility

Samuel has demonstrated extraordinary acceptance of responsibility. He waived indictment and pled guilty by Information, thereby sparing the Government from preparing for expending significant resources on the grand jury and trial processes.

## III. ARGUMENT

### A. Sentencing Framework

This Court well understands the 18 U.S.C. § 3553(a) factors used in determining and imposing sentences that are "sufficient, but not greater than necessary" to achieve the penological objectives of the criminal justice system. *United States v. Booker*, 543 U.S. 220 (2005), *see also Nelson v. United States*, 555 U.S. 350, 352 (2009) ("the Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable"). After the *Booker*, *Gall* and *Kimbrough* decisions, the sentencing guideline range is no longer a mandatory sentencing range but instead is one of several factors for the Court to consider in fashioning an appropriate sentence. *Booker*, 543 U.S. at 220; *Gall v. United States*, 128 S.Ct. 586 (2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007).

Sentencing judges therefore "have discretion to select an appropriate sentence, and in doing so are statutorily bound to consider the factors listed in § 3553(a), including the advisory Guidelines range." *United States v. Cavera*, 550 F. 3d 180, 188 (2d Cir. 2008) (*en banc*). This Court is empowered to consider its "own sense of what is a fair and just

sentence under all the circumstances." *United States v. Jones*, 460 F. 3d 191, 195 (2nd Cir. 2006).

### B. The Guideline Calculations

Samuel does not dispute the Guideline Calculation made on Page 5, Paragraphs 12 through 20 of the Revised Presentence Investigation Report (hereinafter "Revised PSIR"), which are:

| Guideline Provision | Description | Offense Level |
|---|---|---|
| USSG § 2L1.2(a) | Base Offense Level | 8 |
| USSG § 4C1.1 | Zero-Point Offender | -2 |
| USSG § 3E1.1(a) | Acceptance of Responsibility | -2 |
|  | Total Offense Level | 4 |
|  | Criminal History Category I | Guideline Range: 0-6 months |

As correctly pointed out by the Revised PSIR, given that the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required unless the applicable guideline in Chapter Two expressly requires such a term. USSG § 5C1.1(b). Applying Chapter Two of the USSG to the charges in this case, no guidelines in said Chapter require a period of incarceration.

### C. Mitigating Factors Affecting the Sentence

Pursuant to 18 U.S.C. § 3553(a), Samuel respectfully requests that this Court consider the following factors in mitigation when determining his sentence. These factors reflect that a time-served sentence is appropriate here.

### 1. Current Incarceration

Samuel has been incarcerated since February 7, 2025. On the day of his sentencing hearing, June 4, 2025, Samuel will have served three months and 28 days of incarceration. This time period puts Samuel within the sentencing guideline range.

### 2. Criminal History

Despite this previous conviction, Samuel meets the qualifications for a Zero-Point Offender pursuant to USSG § 4C1.1.

Further, when Samuel was apprehended by Agent Lamoreau he was not committing a crime other than the crime for which he pled guilty in this matter.

Lastly, there is no evidence to suggest that Samuel was engaged in any other criminal activity while he was in the United States.

### 3. Early Acceptance and Plea

On February 12, 2025, Samuel was arraigned on a Complaint containing one count of Re-Entry After Prior Deportation in violation of 8 U.S.C. § 1326(a). Samuel pled not guilty.

Less than one month later, on March 5, 2025, Samuel waived indictment and pled by Information to charges mirroring the Complaint.

While this is a very serious offense, Samuel recognized his role and has accepted responsibility. Samuel's plea and waiver of indictment spared the Government from preparing for, and expending significant resources on, the grand jury and trial processes.

### 4. Financial Support and Family

As described above, Samuel's motivator for illegally entering the United States was so that he could financially support his family back in Guatemala. Despite the illegality of Samuel's 2023 entry into the United States, Samuel traveled more than 3,500 miles from his residence in Guatemala to Maine in order to find work. Samuel's trip is nothing short of extraordinary and is an incredible risk.

While working in construction in the United States, Samuel was paid $18 per hour and sent approximately $194 per week to his family in Guatemala.

     5.    *Cooperation with Law Enforcement*

Even though Samuel declined questioning by Agent Lamoreau at the Port of Entry, during the traffic stop he told Agent Lamoreau that he was a citizen of Guatemala, that he did not have documentation to stay or remain in the country, and that he was illegally present in the United States. Samuel was the only occupant in the vehicle to provide this information.

## IV.    CONCLUSION AND REQUESTED SENTENCE

In summary, we believe there are a large number of factors in Samuel's background which, especially when considered in combination with each other, warrant a time-served sentence.

Specifically, those are: (1) how quickly Samuel accepted responsibility for his actions by waiving indictment and pleading guilty, less than 30 days after his first appearance in court; (2) Samuel is a devoted family man as demonstrated by his daily contact with his wife and two young children prior to being arrested; (3) the reasons for Samuel to risk returning to the United States was to find steadier employment and obtain

better wages, compared to what was available in Guatemala; (4) Samuel demonstrated a strong work ethic by living in Rhode Island, but accepting jobs in other states including Maine, where he stayed for days at a time on a number of occasions; (5) Samuel sent a substantial portion of his earnings back to his family in Guatemala on a weekly basis; (6) Samuel truthfully identified himself to Agent Lamoreau and admitted he was here illegally; (7) there is no indication Samuel had any other negative contacts with the criminal justice system during the remainder of the time he was here in this country; (8) Samuel is a Zero-Point offender, and that his guideline range is only 0-6 months, which is the lowest possible range in the Sentencing Table; (9) and, finally we firmly believe the nearly four months Samuel has already spent in custody satisfies the goals of sentencing, not necessitating for him to be sent off to the Bureau of Prisons for any additional incarceration.

      For all of these reasons, we ask the Court to impose a time-served sentence.

      Dated this 2nd day of June, 2025 in Portland, Maine.

      Respectfully Submitted,

/s/ Stephen M. Sweatt, Bar No. 6270
Counsel for Samuel Par-Lopez
ZERILLO LAW FIRM, LLC
1250 Forest Avenue, Ste 3A
Portland, ME 04103
*stephen@zerillolaw.com*

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CRIMINAL NO. 2:25-cr-00036-LEW** |
| ) | |
| SAMUEL PAR-LOPEZ ) | |
| ) | |
| Defendant. ) | |

**CERTIFICATE OF SERVICE**

I, Stephen Sweatt, hereby certify that I have caused the above DEFENDANT'S SENTENCING MEMORANDUM to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record, along with United States Probation..

Dated this 2nd day of June, 2025 in Portland, Maine.

Respectfully Submitted,
ZERILLO LAW FIRM, LLC

/s/ Stephen M. Sweatt, Bar No. 6270
Counsel for Samuel Par-Lopez
1250 Forest Avenue, Ste 3A
Portland, ME 04103
*stephen@zerillolaw.com*